**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHAWN POTTER, *Derivatively, and on behalf of Groupon, Inc.*, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW D. MASON, PETER J. BARRIS, KEVIN J. EFRUSY, MELLODY HOBSON, BRADLEY A. KEYWELL, ERIC P. LEFKOWSKY, THEODORE J. LEONSIS, and HOWARD SCHULTZ, <br><br> Defendants, <br><br> and <br><br> GROUPON, INC., <br><br> Nominal Defendant. | Case No.: |

**SHAREHOLDER'S DERIVATIVE COMPLAINT**

Plaintiff, by his undersigned counsel, derivatively on behalf of Groupon, Inc. ("Groupon" or the "Company"), alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon, among other things, his counsel's investigation, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings, news reports, press releases, and other publicly available documents regarding Groupon, as follows:

**NATURE OF THE DERIVATIVE ACTION**

1.    This is a shareholder derivative action brought on behalf of Nominal Defendant Groupon against Andrew D. Mason, Peter J. Barris, Kevin J. Efrusy, Mellody

Hobson, Bradley A. Keywell, Eric P. Lefkosky, Theodore J. Leonsis, and Howard Schultz (collectively, "Defendants"), by Plaintiff Shawn Potter, who is, and at all times relevant hereto has been, a Groupon shareholder.

2.      Plaintiff, derivatively on behalf of Groupon, seeks relief for the damages sustained and to be sustained by the Company as a result of Defendants' breaches of their fiduciary duties.

3.      Specifically, Defendants, all of whom are members of the Company's Board of Directors, were fully aware and on notice of the Company's numerous accounting deficiencies, its susceptibility to revenue recognition problems given the inadequate controls in place, and the harm that could befall the Company and its shareholders as a result of these material weaknesses. At all times, the Defendants were aware that the Company, in becoming a publicly traded corporation, would be required to conform to certain accounting standards regarding its refund recognition and that failure to conform could produce misleading and inflated revenue results and wrongfully induce investors to purchase the stock. Nevertheless, the Defendants willfully disregarded these issues and permitted the Company to function without sufficient internal controls. As a result of these deficiencies the Company reported inaccurate financials, was forced to revise them, and has been exposed to severe harm.

4.      On June 2, 2011, Groupon filed its first Form S-1 Registration Statement with the SEC (the "Registration Statement"). Thereafter, the Registration Statement was amended numerous times preceding the Company's Initial Public Offering ("IPO") on November 3, 2011. These amendments were necessary because the Registration

Statement contained several material misrepresentations concerning the Company's accounting methodologies and metrics, as well as its financial position.

5.     On November 3, 2011, the Company went public, selling 35 million shares at the price of $20 per share. The IPO produced net proceeds of $658 million.

6.     On February 8, 2012, Groupon issued a press release announcing its financial results for the fourth quarter and for the year ended December 31, 2011. Less than two months later, on Friday, March 30, 2012, following the close of the market, the Company issued a press release announcing a revision to these financial results. The Company reported that revenue in for the fourth quarter of 2011 needed to be reduced by $14.3 million. The revision also revealed an increase in operating expenses and reductions in operating income, net income, and earnings per share. Groupon admitted that these revisions were the result of material problems in its accounting controls.

7.     The reaction from investors was swift. On Monday, April 2, 2012, the first day of trading after the Company's announcement, the Company's stock dropped 17% ($3.10) to close at $15.28 per share. In addition, the SEC announced a preliminary investigation into Groupon's accounting problems.

8.     While the Company has attempted to downplay the damage and effect of the March 30, 2012, revision, it represents a huge blow to the Company and its future prospects. Defendants failed to properly implement, oversee, and maintain sufficient internal controls, practices, and procedures for the Company to ensure compliance with federal law, Generally Accepted Accounting Procedures ("GAAP") and Generally Accepted Accounting Standards ("GAAS"). As a result of Defendants' failure to comply with their fiduciary duties, the Company has suffered from the misappropriation and

misuse of proprietary, non-public and material corporate inside information concerning Groupon's inflated financials and misleading IPO-related filings -- including the IPO Registration Statement and Prospectus, which caused the value of the Company's revenue and financial results to be materially overstated.

9.     Furthermore, Defendants' wrongdoing has caused Groupon to revise its financial results for fourth quarter and year ended December 31, 2011, and has exposed the Company to potential liability in the form of SEC investigations, as well as other losses and damages. Further, Groupon's reputation and goodwill has been irreparably damaged. As a result of the Defendants' breaches of their fiduciary duties, gross negligence, and/or reckless disregard, the Company has suffered and stands to continue suffering severe harm.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds the jurisdictional amount of $75,000, exclusive of interest and costs. In addition, this court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

11.     Venue is proper in this Judicial District because Defendant Groupon is headquartered in this District and a substantial portion of the occurrences complained of herein occurred in this district. In addition, one or more of the Defendants either resides in or maintains offices in this district.

## PARTIES

12.    Plaintiff Shawn Potter is a resident and citizen of Virgina, acquired Groupon common stock pursuant or traceable to the IPO and has held his shares continuously since.

13.    Nominal Defendant Groupon is a corporation, which maintains its executive offices at 600 West Chicago Avenue, Suite 620, Chicago, Illinois, and is incorporated under the laws of the State of Delaware. Groupon is an e-commerce marketplace that connects merchants to consumers by offering goods and services at a discount in North America and internationally via internet and e-mail promotions. The Company was founded in 2008 as ThePoint.com and subsequently changed its name to Groupon, Inc. Groupon went public on November 3, 2011 and its stock trades on the NASDAQ exchange.

14.    The directors listed below, sometimes referred to herein as the "Director Defendants," served during the relevant timeframe as members of the Board of Directors of Groupon, Inc.

15.    Defendant Andrew D. Mason ("Mason") is a co-founder of the Company and serves as the Chief Executive Officer ("CEO") and director of Groupon.

16.    Defendant Peter J. Barris ("Barris") has served as a director of the Company since 2008. Mr. Barris also serves as Chair of the Compensation Committee and is a member of the Nominating and Governance Committee.

17.    Defendant Kevin J. Efrusy ("Efrusy") has served as a director of the Company since 2008. Mr. Efrusy also serves as a member of the Audit Committee and Compensation Committee.

18. Defendant Mellody Hobson ("Hobson") is a director of Groupon and has served in that capacity since prior to the IPO.

19. Defendant Bradley A. Keywell ("Keywell") is a co-founder of the Company and has served as a director of the Company since 2006. Mr. Keywell also serves as a member of the Compensation Committee and the Nominating and Governance Committee.

20. Defendant Eric P. Lefkofsky ("Lefkofsky") is a co-founder of the Company, a director and serves as Executive Chairman of the Board of Directors of Groupon.

21. Defendant Theodore J. Leonsis ("Leonsis") has served as a director of the Company since 2009. Mr. Leonsis also serves as Chair of the Audit Committee and as a member of the Nominating and Governance Committee and the Compensation Committee.

22. Defendant Howard Schultz ("Schultz") has served as a director of the Company since 2011. Mr. Schultz also serves as a member of the Audit Committee.

## SUBSTANTIVE ALLEGATIONS

### A. Background

23. Groupon is an e-commerce local marketplace, which connects merchants to consumers by offering goods and services at a discount in North America and internationally. The Company conducts business with a wide variety of businesses including those involved in the sale of food and drink, activities, health and beauty, events, services and retail. Groupon sends daily e-mails to its subscribers containing discounts for good and services, which are targeted by the subscriber's location and

personal preferences. Consumers can also access the Company's deals through the Groupon website and mobile applications.

24.     On June 2, 2011, Groupon filed a Form S-1 Registration Statement and made several subsequent amendments thereto. After all of the amendments had been incorporated, the Registration Statement was declared effective by the SEC on November 3, 2011, and the Company held its IPO.

### B.     History of Groupon's Accounting Problems

25.     The Company's first Form S-1, filed on June 2, 2011, contained an unusual non-GAAP accounting metric referred to as "adjusted consolidated segment operating income" or "ACSOI." ACSOI excluded substantial expenses and therefore would permit Groupon to show positive operating income despite the fact that it was not profitable. Investors and the SEC were skeptical and critical of the use of ACSOI and claimed it was a misleading accounting metric. In response, on August 10, 2011, the Company amended its Form S-1 and eliminated the ACSOI metric.

26.     On September 23, 2011, as a result of a recalculation of its finances based on GAAP the Company was forced to again amended the Registration Statement. In short, the Company revised revenue for the first half of 2011 by more than half from $1.5 billion to $688 million. The enormity of this change shocked the investing public and raised concerns regarding whether the Company would complete the Registration process and go public.

27.     On the same day, the New York Times Dealbook published an article reacting to the major revision in Groupon's revenue. The article written by Michael J. De La Merced and Evelyn M. Rusli states, in pertinent part:

Groupon disclosed a major accounting change on Friday, essentially halving its once-jaw-dropping revenue after it encountered resistance from regulators with its filing to go public.

Groupon, the online coupon titan, announced separately that its chief operating officer of about five months, Margo Georgiadis, had stepped down.

***The changes in the revised filing and the executive departure are likely to spur additional questions about Groupon, a much- envied rising star in the constellation of new Internet companies.*** The company has grown rapidly, but its ability to sustain that growth, the ways it measures growth and the eccentric public persona of its chief executive have come under fire at times.

***Despite those criticisms, and the current turmoil in the stock market, Groupon is still aiming to go public next month, people briefed on the matter have said.*** That offering could value Groupon at more than $15 billion.

Michael J. De La Merced & Evelyn M. Rusli, Accounting Change Cuts Groupon Revenue, N.Y. Times Dealbook, (Sept. 23, 2011), http://dealbook.nytimes.com/2011/09/23/groupon-changes-its-revenue-accounting/ (emphasis added).

28.     Thus, despite the negative reaction to the enormous revision in the Company's revenues and criticism from regulators regarding its accounting practices, the Company went public.

## C. Groupon Misstates The Numbers

29.     The Prospectus for the IPO was amongst the documents included in the Registration Statement and was filed with the SEC on November 7, 2011. The Prospectus stated that certain key financial data -- specifically, the summary consolidated statements of operations data for periods ending September 30, 2010 and 2011, as well as the balance sheet data as of September 30, 2011 -- were derived from unaudited consolidated financial statements. The Prospectus stated, in pertinent part:

The summary consolidated statements of operations data for the periods ended September 30, 2010 and 2011 and the balance sheet data as of September 30, 2011 have been derived from our unaudited consolidated financials statements included elsewhere in this prospectus. ***The unaudited information was prepared on a basis consistent with that used to prepare our audited financial statements and includes all adjustments, consisting of normal and recurring items, that we consider necessary for a fair presentation of the unaudited period.***

Groupon Inc., Prospectus [424(B)(4)], (November 7, 2011),

http://www.sec.gov/Archives/edgar/data/1490281/000104746911009142/a2206165z424 b4.htm (emphasis added).

30.     Notwithstanding the amendments to the Registration Statement, the following information was inaccurate and not presented in accordance with GAAP and sound accounting. If the Company followed the appropriate auditing procedures, implemented the proper accounting controls and prepared its financials in accordance with GAAP, the Company would not have been forced to revise its financials and suffer the resulting damage. The Defendants failed to ensure that prior to the IPO the Company was in full compliance with GAAP and had implemented the proper accounting controls. This failure exposed the Company to potential liability from investors, who believed the Directors had implemented the proper accounting controls following the September 23, 2011, revision.

31.     On February 8, 2012, Groupon issued a press release containing its fourth quarter and full year 2011 financial results. For the fourth quarter of 2011 Groupon reported a net loss of $42.7 million, or ($0.08) diluted earnings per share (EPS), and revenue of $506.5 million. Additionally, for fiscal year 2011 the Company reported a net loss of $350.8 million, or ($0.97) diluted EPS, and revenue of $1.6 billion. Groupon also

issued first quarter 2012 guidance, which forecasted income between $15 million and $35 million with revenue between $510 million and $550 million.

32.     Following this news, the Company's stock fell to $21.17 per share. The stock was still trading above the IPO price at this time, however, only because Groupon's improper accounting practices and artificially inflated financial results had not been disclosed yet.

### D. The Accounting Problems Revealed

33.     Once the market closed on March 30, 2012, the Company issued a press release announcing the restatements of the Company's recently published financial results and filed the restatements within its Form 10-K filed with the SEC on the same day. Groupon's revenue for the fourth quarter of 2011 was reduced by $14.3 million after initially reporting revenue of $506.5 million. As a result, Groupon's operating income decreased by $30 million, net income fell by $22.6 million, and EPS dropped by ($0.04). The Company stated the restatements were the result of a shift in the fourth quarter deal mix and higher price point offers, which then caused higher refund rates. The release provides in pertinent part:

> CHICAGO--(BUSINESS WIRE)--Groupon, Inc. (NASDAQ: GRPN) today announced a revision of its reported financial results for its fourth quarter and year ended December 31, 2011. Groupon also affirmed its guidance for the first quarter of 2012.
>
> The revisions resulted in a reduction to fourth quarter 2011 revenue of $14.3 million. The revisions also resulted in an increase to fourth quarter operating expenses that reduced operating income by $30.0 million, net income by $22.6 million, and earnings per share by $0.04. Financial results for prior periods, including as of and for the nine months ended September 30, 2011, were not affected by the revisions.
>
> There is no change to Groupon's previously reported operating cash flow of $169.1 million for the fourth quarter 2011 and $290.5 million for the full year 2011. There is also no change to Groupon's previously reported free

cash flow, which is a non-GAAP financial measure that reflects cash flow from operations less purchases of property and equipment, of $155.1 million for the fourth quarter 2011 and $246.6 million for the full year 2011.

The revisions are primarily related to an increase to the Company's refund reserve accrual to reflect a shift in the Company's fourth quarter deal mix and higher price point offers, which have higher refund rates. The revisions have an impact on both revenue and cost of revenue. A more detailed explanation of the refund reserve is included in the Critical Accounting Policies and Estimates section of Groupon's Annual Report on Form 10-K for the year ended December 31, 2011, filed today with the Securities and Exchange Commission (SEC).

"We remain confident in the fundamentals of our business, as our performance continues to highlight the value that we provide to customers and merchants," said Jason Child, Groupon CFO. Groupon affirmed its guidance contained in its February 8, 2012 press release regarding expectations for first quarter 2012 revenue of $510 million to $550 million and income from operations of $15 million to $35 million. This guidance includes approximately $35 million for stock-based compensation and acquisition-related expense, and it assumes no material business acquisitions or investments and no further revisions to stock-based compensation estimates.

***In conjunction with the completion of the audit of Groupon's financial statements for the year ended December 31, 2011 by its independent auditor, Ernst & Young LLP, the Company included a statement of a material weakness in its internal controls over its financial statement close process in its Annual Report on Form 10-K for year ended December 31, 2011. The Company has been working for several months with another global accounting firm in preparation for reporting on the effectiveness of its internal controls by the end of 2012, as required following Groupon's initial public offering last year.*** The Company continues to implement process improvement initiatives and augment its staffing, and is expanding the accounting firm's engagement scope to address the underlying causes of the material weakness. Further discussion of the material weakness can be found in the Company's Form 10-K, filed today with the SEC.

Groupon Inc., Groupon Announces Revised Fourth Quarter and Full Year 2011 Results,

Confirms First Quarter Guidance, (Mar. 30, 2012),

http://investor.groupon.com/releasedetail.cfm?ReleaseID=660861 (emphasis added).

34.     The conduct of Groupon admitted to above is a violation of FASB Financial Accounting Standard 48, which governs the manner in which a Company can estimate revenue for refundable products. Groupon was unable to estimate the refunds that it would need to make reserves for and, as a result, the Company was required to not recognize revenue until the given refund period had passed. The Company, however, failed to fulfill this requirement and, thus, produced inflated revenue figures because the Company did not properly account for the refund reserves.

35.     Further, the restatement affirmed that despite being informed of the Company's material weaknesses in its accounting controls, the Defendants opted to push ahead with the IPO without implementing the proper controls and conforming with GAAP measures. Such failure has caused and will cause the Company to suffer material harm in the form of civil liability, SEC fines and loss of investor confidence.

36.     Also on March 30, 2012, The Financial Times published an article entitled "Groupon restates 2011 results," which stated in part:

> Groupon has revealed an accounting restatement that had the effect of wiping out its operating profit for the final months of last year, extending the series of financial hiccups that have bedevilled the fast-growing online coupons company.
>
> ***The news late on Friday included an admission of "material weakness" in its internal controls and comes just six months after its initial public offering***. It triggered a 7 per cent drop in its shares in after-hours trading.
>
> Groupon blamed the restatement on its failure to account properly for its move into new markets where there is a higher chance that consumers will demand a refund.
>
> Customers who buy coupons that give a discount on high-value services, such as laser eye surgery or hair removal, are more likely to ask for their money back, according to the company, forcing it to withhold more of its money in a refund reserve. The expansion into higher-risk categories like

this only took place late last year, Groupon said, leading to a restatement just of the final quarter's figures.

The accounting change reduced the company's reported operating income for the period by $30m – more than wiping out the $15m it had previously reported for the period. It had less impact on revenues, shaving $14.3m from the $506m that had been reported before.

The admission of the latest error follows accounting changes Groupon was forced to make as it was preparing for its initial public offering last year. These included a restatement of the way it calculates revenues, as well as an agreement to de-emphasise its preferred measure for profits, known as "adjusted consolidated segmental operating income", after criticism from the SEC.

Groupon said the accounting change would not affect the cash flow it had reported previously. It also affirmed earnings guidance it had already given for the current quarter.

Richard Waters, Groupon restates 2011 results, Financial Times, (Mar. 30, 2012),

http://www.ft.com/intl/cms/s/0/38c6bd4c-7aad-11e1-8ae6-00144feab49a.html#axzz1rfGpe68K

(emphasis added).

37.      Additionally on March 30, 2012, Seeking Alpha published an article

entitled "Brace for More Surprises: Groupon Restates Earnings, Reveals Weakness in

Financial Controls," which stated in part:

After traders packed up for the weekend, Groupon (GRPN) issued two warnings during the evening of March 30th.

First, Groupon discovered it under-estimated its refund rate for the previous quarter. As a result, the company revised downward its revenue and earnings numbers:

"The revisions resulted in a reduction to fourth quarter 2011 revenue of $14.3 million. The revisions also resulted in an increase to fourth quarter operating expenses that reduced operating income by $30.0 million, net income by $22.6 million, and earnings per share by $0.04."

***This means GRPN actually had a greater loss for the last quarter. GRPN claims in its 10K filing released in parallel with the restatement that it has fixed its refund model to include a change in deal mix and higher priced offers. GRPN does not indicate whether these shifts***

***represent a one-time change or an on-going, dynamic change.*** GRPN is holding firm on its guidance for the current quarter, so the company is implying the shift could be temporary and/or seasonal/cyclical. It is of course possible GRPN got blindsided with a higher number of low-quality merchants. For now, I expect overall refund rates to trend upward, and I expect analysts to ask a lot of questions about this during the next conference call. Refund dynamics will get the spotlight as a source of potential uncertainty in GRPN's revenues and profits.

Second, GRPN warned that it "identified a material weakness in [its] internal control over financial reporting which could, if not remediated, result in material misstatements in our financial statements." The details are included in the company's 10K filing. GRPN is now expanding the scope of a review of its internal controls mandated by its IPO filing so that it can understand the source of the weakness and fix it. The 10K makes it clear that the conclusion of this review could uncover more financial surprises at an as yet undetermined time:

"Although we plan to complete this remediation process as quickly as possible, we cannot at this time estimate how long it will take, and our initiatives may not prove to be successful in remediating this material weakness. If our remedial measures are insufficient to address the material weakness, or if additional material weaknesses or significant deficiencies in our internal control over financial reporting are discovered or occur in the future, our consolidated financial statements may contain material misstatements and we could be required to restate our financial results."

Until this issue is resolved, the implied risk premium for GRPN grows larger. GRPN's stock dropped as much as 10% in after-hours trading. Curiously, GRPN's stock rallied into these revelations.

Brace for More Surprises: Groupon Restates Earnings, Reveals Weakness in Financial Controls, Seeking Alpha, (Mar. 30, 2012), http://seekingalpha.com/article/469821-brace-for-more-surprises-groupon-restates-earnings-reveals-weakness-in-financial-controls (emphasis added).

38. These news stories reflected the market's reaction, which on the news of the restatement, drove Groupon's stock price down $3.10 per share to close at $15.28 per share on April 2, 2012, and a decline of 17% on volume of 10 million shares.

39.     On April 3, 2012, the Wall Street Journal reported that the SEC "is examining Groupon Inc.'s revision of its first set of financial results as a public company, according to a person familiar with the situation." Shayndi Raice and Jean Eaglesham, SEC Probes Groupon, Wall St. J, (Apr. 3, 2012), http://online.wsj.com/article/SB10001424052702303816504577319870715221322.html.

**DEFENDANTS' FIDUCIARY DUTIES AND DAMAGES TO THE COMPANY**

40.     By reason of their positions as directors and/or fiduciaries of Groupon and because of their ability to control the business, corporate and financial affairs of the Company, each of the Director Defendants owed Groupon the duty to exercise due care and diligence in the management and administration of the affairs of the Company and owed the duty of loyalty, including full and candid disclosure of all material facts related thereto. Further, the Director Defendants owed a duty to Groupon to ensure that it operated in compliance with all applicable federal and state laws, rules, and regulations; and that Groupon was not engaged in any unsafe, unsound, or illegal business practices. The conduct of the Director Defendants complained of herein involves knowing violations of their duties as directors of Groupon, which the Director Defendants were aware of or recklessly disregarded, and the risk of serious injury to the Company.

41.     To discharge these duties, the Director Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and financial and corporate affairs of Groupon. By virtue of this obligation of ordinary care and diligence, the Director Defendants were required, among other things, to:

(a)      manage, conduct, supervise, and direct the employees, businesses and affairs of Groupon, in accordance with laws, rules and regulations, and the charter and by-laws of Groupon;

(b)      neither violate nor knowingly or recklessly permit any officer, director or employee of Groupon to violate applicable laws, rules and regulations and to exercise reasonable control and supervision over such officers and employees; ensure the prudence and soundness of policies and practices undertaken or proposed to be undertaken by Groupon;

(c)      remain informed as to how Groupon was, in fact, operating, and upon receiving notice or information of unsafe, imprudent or unsound practices, to make reasonable investigation in connection therewith and to take steps to correct that condition or practice, including, but not limited to, maintaining and implementing an adequate system of financial controls to gather and report information internally, to allow the Director Defendants to perform their oversight function properly to prevent the use of non-public corporate information for personal profit;

(d)      supervise the preparation, filing and/or dissemination of any SEC filing, press releases, audits, reports or other information disseminated by Groupon and to examine and evaluate any reports of examinations or investigations concerning the practices, products or conduct of officers of Groupon and to make full and accurate disclosure of all material facts, concerning inter alia, each of the subjects and duties set forth above; and

(e)     preserve and enhance Groupon's reputation as befits a public corporation and to maintain public trust and confidence in Groupon as a prudently managed entity fully capable of meeting its duties and obligations.

42.     The Director Defendants breached their duties of loyalty and good faith by causing the Company to misrepresent its financial condition, as detailed herein, and by failing to prevent the Director Defendants from taking such illegal actions. In addition, because of these illegal actions and course of conduct during the Relevant Period, the Company is now the subject of several class action lawsuits that allege violations of federal securities laws and an SEC investigation. As a result, Groupon has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a)     Costs associated with coordinating with any SEC investigation and potential fines, which can be imposed as a result of any SEC investigation.

(b)     Costs incurred to carry out internal investigations, including legal fees paid to outside counsel;

(c)     Costs incurred in investigating and defending Groupon and certain directors and officers in the class action lawsuits, plus potentially millions of dollars in settlements or to satisfy an adverse judgment;

(d)     Costs incurred in compensation and benefits paid to the Director Defendants, who breached their duties to the Company; and

(e)     Costs from the substantial loss of market capital.

43.     Moreover, these actions have irreparably damaged Groupon's corporate image and goodwill. For at least the foreseeable future, Groupon will suffer from what is

known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Groupon's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

44.     Plaintiff brings this action derivatively in the right and for the benefit of Groupon to redress injuries suffered, and to be suffered, by Groupon as a direct result of the Director Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, unjust enrichment and violations of federal securities laws. Groupon is named as a Nominal Defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

45.     Plaintiff will adequately and fairly represent the interests of Groupon in enforcing and prosecuting its rights.

46.      Making a pre-suit demand on the Groupon Board would be futile, and therefore, is excused. Despite knowing that the Company's accounting and internal controls were questioned and speculated about during the IPO process and that a lack of accounting controls would cause substantial harm to the Company, the Director Defendants permitted the Company to function without the proper controls during and following the IPO process and thereby, breached their fiduciary duties. As a result of this failure, the Defendants face a substantial threat of liability for their breaches of fiduciary duty, which renders them unable and unfit to objectively evaluate the basis for a pre-suit demand. Thus, demand on the Board would be futile and is excused.

47.     The following eight Director Defendants constitute the Groupon Board: Mason, Barris, Efrusy, Hobson, Keywell, Lefkofsky, Leonsis, and Schultz.  The

Defendants did not exercise the reasonably appropriate oversight over the Company's internal controls for accounting.

48.     Defendant Mason is a co-founder of Groupon and also employed as the CEO and a director of the Company. As a result, he derives substantial and primary income from his professional relationship with Groupon. Nevertheless, in the time prior to, during and following the IPO, Mason permitted the Company to function without the proper and appropriate internal controls even though, he had undeniable knowledge of the following: (i) once the IPO process had begun, the Company would be required to comply with certain accounting rules and regulations; (ii) as a result of going public, the Company would need to implement new financial controls; (iii) prior to the IPO, there was skepticism in the market concerning the accuracy of the Company's financial disclosures and results; and (iv) the Company's accounting and financial controls were in need of significant oversight because of changes needed and skepticism in the market.

49.     Defendant Mason, however, failed to take any action to implement the proper controls, which would prevent inflated financials. Instead, Defendant Mason opted for inaction in the face of overt risk and because of that risk, Groupon has been seriously harmed.    As a result, demand on Defendant Mason is futile.

50.     Defendant Lefkofsky is a co-founder of Groupon and the Executive Chairman of the Board. As a result, he derives substantial income from his professional relationship with Groupon. Nevertheless, in the time prior to, during and following the IPO, Lefkofsky permitted the Company to function without the proper and appropriate internal controls even though, he had undeniable knowledge of the following: (i) once

the IPO process had begun, the Company would be required to comply with certain accounting rules and regulations; (ii) as a result of going public, the Company would need to implement new financial controls; (iii) prior to the IPO, there was skepticism in the market concerning the accuracy of the Company's financial disclosures and results; and (iv) the Company's accounting and financial controls were in need of significant oversight because of changes needed and skepticism in the market.

51.     Defendant Lefkofsky, however, failed to take any action to implement the proper controls, which would prevent inflated financials. Instead, Defendant Lefkofsky opted for inaction in the face of overt risk and because of that risk, Groupon has been seriously harmed. As a result, demand on Defendant Lefkofsky is futile.

52.     Defendant Keywell, along with Mason and Lefkofsky, are the founders of Groupon and the controlling shareholders, who collectively hold approximately 57.8% of the Company's voting power. Individually and collectively, these defendants, by their position as controlling shareholders, have profited from the Company's improper accounting procedures and continue to do so.  As a result, they suffer from a conflict of interest with the unaffiliated minority shareholders and the Company itself, and therefore demand on Defendants Mason, Lefkofsky and Keywell is futile.

53.     Defendants Leonsis, Efrusy and Schultz constitute the Company's Audit Committee. The Audit Committee is responsible for the oversight of the regulatory reporting process, internal compliance audits and reviews of management's reports of financial misconduct by employees, officers or directors. Despite these responsibilities, the Audit Committee failed to implement sufficient processes and controls for managing the business and financial risks. By such inaction and knowing disregard, defendants

Leonsis, Efrusy and Schultz breached their fiduciary duties by not sufficiently monitoring the Company's business and financial risks. As a result, any demand upon them is futile.

54.     The Company's Nominating and Governance Committee is comprised of Defendants Keywell, Efrusy and Leonsis. According to the committee's charter, the Nominating and Governance Committee is charged with reviewing any potential conflicts of interest of any current director, assisting the Board in the development and implementation of "best practices" in order to enhance the Company's corporate governance, and assisting in monitoring compliance with the Company's current corporate governance policies. Nevertheless, despite these responsibilities, the Nominating and Governance Committee did not implement sufficient "best practices" and failed to monitor the Company's compliance with its own corporate governance policies regarding financial reporting. Defendants Keywell, Efrusy, and Leonsis breached their fiduciary duties by allowing the Company to operate without the proper internal controls in place to its detriment. Therefore, demand on Defendants Keywell, Efrusy and Leonsis would be futile.

55.     The Director Defendants have failed to investigate and take proper action against the responsible parties, including themselves, who permitted the Company to operate without the proper accounting and internal controls prior to and since the IPO. The Director Defendants have acquiesced to and permitted the noncompliance and therefore, the resultant breaches of fiduciary duties to occur. The Director Defendants have been and are unable to willingly comply with their fiduciary obligations and with the regulations required of and by the Company. Further, the Director Defendants are

unwilling to take action against themselves. Six of the eight Director Defendants have served on the Company's board for three years or longer and experienced substantial financial gain upon taking the Company public. As a result, they have developed professional and personal relationships, entangled financial alliances and interests, and therefore, cannot and will not vigorously prosecute any action on behalf of the Company. Therefore, demand on the Board is futile and is excused.

56.     The Director Defendants' failure to implement legally sufficient accounting and internal controls caused the Company's noncompliance with internal guidelines, regulations and laws. After only five months of being a publicly-traded Company, Groupon has admitted to material weaknesses in its financial controls. Further, the Company did not clarify nor affirm that the material weakness is not more extensive than initially disclosed and/or that it does materially undermine the viability and integrity of the Company's Registration Statement, Prospectus and other IPO-related filings. Upon deciding to take the Company public, the Director Defendants knew or should have known: (i) once the IPO process had begun, the Company would be required to comply with certain accounting rules and regulations; (ii) as a result of going public, the Company would need to implement new financial controls; (iii) prior to the IPO, there was skepticism in the market concerning the accuracy of the Company's financial disclosures and results; and (iv) the Company's accounting and financial controls were in need of significant oversight because of changes needed and skepticism in the market. Despite the obvious red flags, the Director Defendants intentionally and/or recklessly failed to properly oversee the Company's financial controls and reporting process. Therefore, demand on the Board is futile and is excused.

57.     In order to prosecute an action on behalf of the Company, the Director Defendants would have to sue themselves, which would expose them and their fellow directors to potentially tens of millions of dollars in liability. It is apparent that the Board will not go forward with the lawsuit given the consequences. The Director Defendants are exposed to potential liability for not properly overseeing the Company and failing to implement the proper internal accounting and financial controls, which would have prevented the material misrepresentations from occurring. Therefore, demand on the Board is futile and is excused.

58.     The Director Defendants, through their misconduct and wrongdoing, have benefitted and engaged in such conduct in order to preserve their lucrative positions and control of the Company. As a result, Defendants are incapable and unable to exercise the independent judgment necessary bring this action on behalf of the Company. By their blatant course of conduct to date, the Director Defendants have demonstrated that they are unwilling to obtain the proper relief for the unjust enrichment received, despite the losses to the Company as a result of the adjustments to the Company's financial reports and balance sheet. Therefore, demand on the Board is futile and is excused.

59.     Groupon has experienced and will continue to suffer significant harm and losses resulting from the wrongdoing complained of herein. The Director Defendants, however, have not filed any lawsuits on behalf of the Company seeking relief from those responsible for the wrongful conduct. Such a lawsuit would allow the Company to recoup some of the losses it has suffered and will suffer. Therefore, demand on the Board is futile and is excused.

60.     Throughout the IPO process, starting with the Company's first Form S-1 Registration Statement, Groupon has repeatedly faced allegations and questions concerning its accounting procedures. These concerns pressured the Director Defendants into amending the Registration Statement numerous times. As a result, the Director Defendants were aware of the accounting procedures and substantial oversight required to ensure that the Company was in compliance with the applicable rules, regulations and laws. The Director Defendants have shown complete unwillingness to fulfill and/or a reckless and knowing disregard for their fiduciary obligations by failing to institute the proper internal accounting and financial controls, as demonstrated by their inaction given the following red flags:

(a)     When the Company filed its Form S-1 on June 2, 2011, the Registration Statement contained an unusual and controversial non-GAAP accounting metric: ACSOI. Subsequently, Groupon was forced to amend the Registration Statement by eliminating the ACSOI metric because of pressure from the investing public claiming it was misleading.

(b)     In September 2011, the Company had to restate its financial results from the first half of 2011. The restatement resulted in a massive deduction in the Company's revenue from $1.5 billion to $688 million. The massive change in reported revenue led to questions and skepticism regarding Groupon's viability as a publicly-traded company.

(c)     In the Registration Statement, the Prospectus and numerous amendments reported therein, which were all signed by the Director Defendants,

Groupon acknowledged that due its conversion into a publicly traded company, its financial statements would be subject to a higher degree of oversight.

61.     Seven of the eight Director Defendants signed each and every version of the Registration Statement since it was originally filed on June 2, 2011. As a result, these seven directors could not have been unaware of the problems the Company was experiencing during the IPO process regarding its accounting controls. Without question, these board members had notice of the weaknesses and susceptibility of the Company's accounting controls. Further, these board members knew that the inadequate internal controls exposed the Company to significant risk and that they failed to address the internal controls and therefore did not cure the risk. As a result, these Board members breached their fiduciary duties by failing to properly monitor an area of the Company's business, which they knew was in need of oversight. Since these Board members were given numerous opportunities to and still failed to cure the deficiencies in the Company's accounting practices, demand on these members of the Board is futile and therefore excused.

62.     Each member of the Groupon Board is specifically implicated by the misconduct complained of herein, as each member is either: (a) a founder and controlling shareholder; (b) a member of the Audit Committee and/or Nominating and Governance Committee; or (c) signed the misleading IPO documents. As a result, the Board is dominated by individuals, who are implicated in the wrongdoing complained of herein, and therefore, are conflicted, which renders demand futile.

## COUNT I
## BREACH OF FIDUCIARY DUTY

63.     Plaintiff incorporates by reference each and every allegation made above, as though set forth herein.

64.     The Director Defendants, individually and collectively, owe and owed the Company the duty to exercise good faith, loyalty and candor in the management, administration and oversight of the Company's business and affairs, particularly regarding issues as germane as proper internal accounting and financial controls.

65.     The conduct of the Director Defendants, individually and collectively, as set forth herein, was due to their intentional, knowing and/or reckless disregard of the fiduciary duties owed to the Company.

66.     The Director Defendants, individually and collectively, breached their fiduciary duties by willfully participating in and causing the Company to unnecessarily waste corporate funds.     Further, the Director Defendants failed to properly oversee Groupon's business and affairs, the failure of which renders them personally liable to the Company.

67.     As a direct and proximate result of Director Defendants' breaches of fiduciary duties, Groupon has experienced and will continue to experience significant harm. As a result of the wrongdoing alleged herein, the Director Defendants are liable to Groupon.

## COUNT II
## ABUSE OF CONTROL

68.     Plaintiff incorporates by reference each and every allegation above, as set forth herein.

69.     As alleged herein, the Director Defendants' misconduct, individually and collectively, constituted an abuse of their control and influence over Groupon, for which they are legally responsible.

70.     As a direct and proximate result of the Director Defendants' abuse of control, the Company has sustained significant damages.

71.     As a direct and proximate result of the Director Defendants' breaches of their fiduciary duties of good faith, loyalty and candor, the Company has suffered and will continue to suffer significant damages and harm. As a result of the wrongdoing alleged herein, the Director Defendants are liable to Groupon.

72.     By reason of the foregoing, Groupon has been damaged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in the Company's favor against all Defendants as follows:

A.     Declaring that Plaintiff may maintain this action on behalf of the Company and that Plaintiff is an adequate representative;

B.     Declaring that the Director Defendants have breached and/or aided and abetted the breaches of fiduciary duties to Groupon;

C.     Determining and awarding damages to Groupon for the harm suffered as a result of the violations set forth above from each of the Director Defendants, jointly and severally, with interest thereon;

D.     Ordering Groupon and the Director Defendants to take all necessary reforms to improve its corporate governance and internal procedures to comply with the applicable rules, regulations and laws and to protect Groupon from a repeat of the

damaging events described herein, including, but not limited to putting forth a shareholder vote on the following resolutions to amend the Company's By-Laws and Articles of Incorporation:

      i.      A provision which would permit the shareholders of the Company to nominate at least three candidates for election to the Board;

      ii.      A provision which would strengthen the Board's supervision and oversight of operations and implement procedures for greater shareholder input into the policies of the Board;

      iii.      A proposal which would ensure the implementation of effective oversight to ensure compliance with the applicable rules, regulations and laws.

E.      Determining and awarding Groupon enhanced damages in an amount necessary to punish the Director Defendants and to deter future behavior of a similar nature;

F.      Awarding Groupon restitution from the Director Defendants;

G.      Awarding Plaintiff costs and disbursements of this action, including reasonable attorney's fees, experts' fees, costs and expenses; and

H.      Granting such other and further equitable relief as the Court may deem proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury.

DATED: April 30, 2012        Respectfully Submitted,

                        /s/ Keith J. Keogh

Keith J. Keogh
Craig Shapiro
Timothy J. Sostrin
Keogh Law, Ltd.
101 North Wacker Drive, Suite 605
Chicago, Illinois 60606
312.726.1092 (office)
312.726.1093 (fax)
Keith@Keoghlaw.com

GILMAN LAW LLP
Kenneth G. Gilman, Esq.
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, Florida 34134
(239) 221-8301 (telephone)
(239) 676-8224 (facsimile)
kgilman@gilmanpastor.com

*Attorneys for Plaintiff and Proposed Class*

## VERIFICATION

I, SHAWN POTTER, declare that I have reviewed the Complaint ("Complaint") prepared on behalf of GROUPON, INC. [NASDAQ:GRPN], and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of GROUPON, INC. [NASDAQ:GRPN] common stock during the relevant time period in which the wrongful conduct alleged and complained of in the Complaint was occurring.

4/23/2012

DATED                                   SHAWN POTTER